**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 18-cr-201-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

(2) ANDY SELTZER,

    Defendant.

---

## RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SPECIFIC DISCOVERY

---

This matter comes before the Court on Defendant's motion for specific discovery (D. 150).[1]  The Government responded (D. 177).  Consent pursuant to the Grand Junction Western Slope Protocol was withdrawn and this motion is referred pursuant to 28 U.S.C. 636 (b)(1)(B) and any party may object, in writing, to this recommendation within fourteen (14) days.  *See* D. 106.[2]  The Court has reviewed the pending motion and response.  The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises.

---

[1] "(D. 150)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  *See also* Fed. R. Crim. P. 59 (a) & (b).

Defendant moves for provision of multiple specific discovery items. The Court will address each in turn indicating the portion of the motion from which the request emanates.

The Court keeps in mind that, while Defendant filed the instant motion when he was proceeding *pro se*, Defendant is now represented by Counsel. The history of attorney representation is that Defendant was originally represented by Counsel (Defendant discharged two separate CJA attorneys earlier in the case) but then determined to proceed *pro se*. *See* D. 61/64 (discharging Attorney Shaffer) & D. 94/98 (discharging Attorney Stuart). Defendant moved to proceed *pro se* and the Court granted that request, albeit with the appointment of standby counsel, on September 25, 2019 (D. 98). That standby counsel, Richard Stuckey, Esq., was appointed through the CJA plan on 10/7/2019 (D. 99). On March 12, 2020, Defendant again requested to have counsel appointed (D 148). Counsel Stuckey—already familiar with the case due to his standby role—was formally appointed as CJA Counsel on March 25, 2020 and afforded seven (7) days to "adopt, withdraw, or supplement" any pending motion (D. 159). The Court notes that no supplementation occurred to Defendant's *pro se* motion—nor did the Defense respond to or correct the Government response (D. 114). While the Court is cognizant of the general charge to construe a *pro se* motion liberally, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Defendant Seltzer is not proceeding *pro se* so that instruction is irrelevant.

1. Aaron Hampton's post arrest interview (D. 150-1, p. 1). The Government responds stating that all records in the Government's control have been provided and that there is no tape or other audio recording of the interview (D. 177, p. 2). While the case agent may have tried to tape the interview, recording did not occur. *Id.* Based on this record, it is respectfully recommended that

the request for this interview be DENIED as MOOT as the applicable records, to the extent they exist, have been provided.

2.     Favorable evidence (D. 150-1, p. 1).  Defendant nebulously requests favorable evidence, citing to *Kyles v. Whitney*, 514 U.S. 419, 433 (1995).  That section of the *Kyles* opinion addressed a prosecutor's affirmative duty to provide what is typically thought of as *Brady* material.  *Id.*, *see also Brady v. Maryland*, 83 S.Ct. 1194 (1963).  As noted by the Government, aside from essentially being unintelligible, if the request is for *Brady/* exculpatory material, that information has already been provided by the Government and the Government further acknowledges its continuing duty to supplement such material (D. 177, p. 3 & D. 114, p. 6).  Defendants has in no way indicated that the Government's assertion is incorrect or false—thus the Court assumes it to be true.   Based on this record, it is respectfully recommended that the request for favorable evidence be DENIED as MOOT.

3.     Request for specific information regarding supposed confidential source (CS) Sheryl Sullivan (D. 150-1, pp. 3-4).  Defendant believes he has pinpointed Sheryl Sullivan as a CS in this matter.  With regard to the CS, Defendant moves to be provided with:

    (a)  her location, cellular telephone number, and work telephone number;
    (b)  a DEA contract with the CS;
    (c)  a signed information agreement with the CS;
    (d)  daily contingency reports, signed by the CS, confirming disbursement/receipt of funds between the CS and DEA;
    (e)  all charge/sentencing reduction agreements regarding the CS;

      (f)      all information and statements from the CS for a controlled buy;

      (g)      a copy of all records of conversations, agreements, and issues related to the CS;

      (h)      information about who "Shelly" and "Neil" are and who they work for;

      (i)      who the female office was that searched the CS, whether there was a canine at the CS search;

      (j)      whether the CS previously breached any agreement with the Government and used or continued using illegal narcotics; and

      (k)      all discovery pertaining to the CS.

The Government responds, neither confirming nor denying Defendant's purported identification of the CS (D. 177, p. 3).

The Defendant is not entitled to pretrial disclosure of non-expert witnesses. *United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) ("No statute or rule . . . requires pretrial disclosure of non-expert witnesses."); *United States v. Russell*, 109 F.3d 1503, 1510 (10th Cir. 1997) ("In noncapital cases … there is no constitutional right to the pretrial disclosure of witnesses."). For this reason, it is recommended that the Defendant's request for the name, address, and phone numbers of anticipated witnesses be denied as it is without basis in the law.

The Defendant's request for notes and written or recorded statements of anticipated witnesses is governed by the Jencks Act. *See* 18 U.S.C. § 3500. The Government asserts that any notes or recorded statements of witness interviews that exist and are exculpatory or quality by statutory definition as Jencks statements have already been produced or will be retained and produced if appropriate (D. 114, p. 2).

Under the Jencks Act, the government cannot be compelled to produce statements or reports of a government witness until that witness has testified on direct examination at trial. *In re United States*, 834 F.2d 283, 287 (2d Cir. 1987); *United States v. George*, 778 F.2d 556, 562 (10th

Cir. 1985); *see also United States v. Ruiz*, 536 U.S. 622, 629 (2002) (quoting *Weatherford v. Bursey*, 429 U.S. 545,559 (1977) ("There is no general constitutional right to discovery in a criminal case.")). Thus, statements that qualify as Jencks material are a trial right, not a pretrial discovery right. It is recommended, as to Jencks material, that the Defendant's motion be denied, as it is without basis in the law.

The Defendant's request for the substance of oral statements by witnesses is also without basis in the law and should be denied. *See* Fed. R. Crim. P. 16(a)(1)(A) (requiring only the disclosure of "the substance of any relevant oral statement made by *the defendant* . . ." (emphasis added)); 18 U.S.C. § 3500(e) (defining statements that must be disclosed pursuant to the Jencks Act).

The Defendant cites no authority for his request for DEA contracts, agreements between DEA agents and CS, confidential sources. The Government asserts (D. 114, p. 8) that it has disclosed to the Defense the nature of the agreement between the Government and any confidential sources, including any payments received. To the extent the Defendant requests actual copies of any confidential source agreements or contracts, there is no entitlement to such. *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1011 (10th Cir. 1999) ("due process does not necessarily require disclosure in a specific form or manner").

With regard to the request for the identities of Neil and Shelly, the Government asserts that this request is based on a "misunderstanding of the evidence" and instead has to do with a personal conversation that CS-6 was having (D. 177, p. 4). The Government so informed prior Counsel, Martin Stuart, Esq. and will inform present Counsel, Richard Stuckey, Esq. The Court accepts the Government's assertion on this point and thus recommends that the motion requesting such information be denied. Should Counsel Stuckey, after engaging in a conversation with the

Government, have reason to believe the information is still relevant, the Defendant may again move for disclosure no later than fourteen (14) days after such discussion with the Government.

For the foregoing reasons, the Court recommends that each of the requests encapsulated within request 3 be DENIED.

4(a) Video of controlled buy from CS-6 (whom Defendant assumes to be Sheryl Sullivan) and (b) video of controlled buy on Aaron Hampton (D. 150-1, p. 3). With regard to these requests, the Government responds stating that no such videos exist (D. 177, p. 5), and the Defense does not refute this assertion. Thus, it is recommended that the request in 4 (a) & (b) be DENIED as MOOT.

4(c) Defendant requests, again, all exculpatory evidence that would lead to any *Brady* or *Giglio* violations (D. 150-1, p. 3). As was addressed with regard to 2 above, the Government asserts that all such evidence has been provided. Thus, it is recommended that 4(c) be DENIED as MOOT.

4(d) All phone records between any and all co-defendants (D. 150-1, p. 3). The Government asserts that all records obtained pursuant to Title III authorization and all toll records have been provided. The Government objects to any suggestion that the Government should be required to obtain records from a third party. *U.S. v. Harry*, 927 F.Supp.2d 1185, 1210 (D. NM 2013); *see also United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993) (the government need not conduct discovery for the defense). Thus, it is recommended that 4(d) be DENIED.

4(e) The DVR recording and hard drive confiscated on March 1, 2018 (for the day of February 28, 2018 from 405 Chipeta Ave, Jessica Monarrez's home) (D. 150-1, p. 3). The Government asserts

that it has provided this information (D. 177, p. 6).  Thus, it is recommended that 4(e) be DENIED as MOOT.

5.  Disciplinary information regarding DEA Agent Greenfield (D. 150-1, p. 4).  The Government asserts that it will provide any information required pursuant to *Giglio v. United States*, 92 S.Ct. 763 (1972), at the requisite time.  Thus, it is recommended that (5) be DENIED as not yet RIPE.

The following is therefore respectfully recommended that:

1. The request for the Aaron Hampton interview be DENIED as MOOT;

2. The request for favorable evidence be DENIED as MOOT;

3. The request for specific information regarding supposed confidential source be DENIED (with the ability to re-address certain very specific information as set forth above);

4(a) & (b). The requests for videos in 4(a) & (b) be DENIED as MOOT;

4(c). The request in 4(c) for favorable evidence be DENIED as MOOT;

4(d). The request for phone records be DENIED.

4(e). The request in 4(e) for a DVR recording be DENIED as MOOT;

5. The request for *Giglio* information be DENIED as not yet RIPE.

7

Dated at Grand Junction, Colorado this June 30, 2020.

Gordon P. Gallagher

United States Magistrate Judge